Quality Furniture v. United States Quality Furniture v. United States Good morning, Your Honor. We're here today on a relatively narrow question concerning the subject matter jurisdiction of the United States Court of International Trade. Our client, Hutchinson Quality Furniture, is an importer of wooden bedroom furniture from China. We brought this case in order to challenge liquidation instructions. Do you agree that Fujitsu is on point here? Excuse me? Would you agree that Fujitsu is on point here? No, Your Honor. Fujitsu is not on point here, because Fujitsu actually gets to the merits of a case. Fujitsu gets to a situation where the Commerce Department has spoken and customs acts contrary to what the Commerce Department has said. In the decision below, Judge Kelly relied upon the Fujitsu decision and also relied upon the Alden-Leeds decision. Now, those are cases where Commerce has given an instruction, for example, suspend liquidation of the entry or liquidate the entry at a given rate. And those instructions are not questioned. What's questioned is whether customs in liquidating an entry properly carried out those instructions. Now, it's entirely possible that at the end of the day, this case may sort of fall into the Alden-Leeds or Fujitsu baskets. But we don't know yet. We don't know yet. And that's the point. What we do know is that the liquidation instructions that were issued and that were challenging under the Administrative Procedure Act and which are supposed to tell customs when the suspension of liquidation was lifted don't do that. We know that Judge Rustani's order in the Orient International case was dated in February of 2013. The liquidation instructions say contrary. They say, oh, it was lifted in June of 2013. Makes a big difference, because you're starting the notice is supposed to start a six-month window for customs to liquidate. Now, it's pretty clear from the record that the liquidation notice is wrong, that the June 13, 2013 order from Judge Rustani didn't lift the suspension of liquidation. In fact, when the domestic furniture industry asked her for an order, which she'd issued on that date, they asked her to dissolve her injunction, which suspended liquidation of the cases. She didn't do that. She crossed out the word dissolve in the minute order, and she wrote, amend my previous decision. The order she issued was not, and Judge Rustani is pretty clear on what she's doing, the order that Judge Rustani issued wasn't lifting the suspension of liquidation. That had been lifted before, and she knew that. What her order was was an order directing execution of her final judgment. Now, this leaves open the question, on what date, if ever, did the Commerce Department communicate liquidation instructions to customs? On what date did the Commerce Department tell customs the valid date on which the suspension of liquidation had lifted, and on which the six-month period began to run? Now, I don't know that, as I stand before you. The only way I can find out is if the CIT takes jurisdiction of this case under the Administrative Procedure Act, and the Commerce Department files its record. You're trying to establish that your client is entitled to a deemed liquidated rate, right? No, well, we don't know. No, but isn't that where you're trying to get, is to say you're entitled to the rate at which you enter the goods because you believe the goods should have been deemed to have been liquidated at a point in time, right? What I am hoping the outcome to this case is, is that when we get our APA review, we will find a different communication of the liquidation date. You want to be able to say the correct rate for these particular goods is the rate you put on the entry when you brought them in. Absolutely, that's the desired outcome. And I think the argument from the government is that that relief you could have obtained if you had gone the route of an ordinary protest. No, that's not true, because, well, a protest is only a gateway to challenge a decision of customs. A protest says, whew, you charged me the wrong sum. Oh, no, but a protest isn't a gateway to overturn a commerce decision. I'm not talking about that. I'm talking about getting you what you want to get. I don't know that a protest gets me what I want to get, Your Honor, because what I want to get. Do you affirmatively not know it? You say, I don't know that it gets me what I want to get. Well, I do know that a protest does not get me a review of the validity of commerce's liquidation instructions. And that would be based on this court's decision years ago in the Conoco case. A protest is only there to challenge erroneous decisions by customs. You can't use it to challenge a decision by another agency, even if that decision of the other agency happens to merge in and affect the customs decision. If the goods should have been deemed liquidated, why can't that decision be made? Your Honor, I don't know, to tell you the truth. Well, because we have to find out what date, if any. Don't you have to tell me that that remedy is unavailable? I don't think the protest remedy is available here. Now, there's. I'm saying you don't think it, but my understanding was the government's argument here was pretty simple, which was it is. And that's the way you should have gone. Again. And that this APA is background noise. And that's why I asked you if Fujitsu was on point. Well, I don't believe it is, Your Honor. I mean. If we decide it is, then that's over, right? Case is over. Let's say we get our administrative review. And let's say that we discover that the liquidation instructions, or the correct lifting of suspension, was communicated to customs on a different date. The four-month gap between the day Judge Rustani lifted the suspension and this improper notice of whatever went out from commerce. We very well may be able to say, these entries are deemed liquidated. And ask this court, in this 1581I action, to so find. Now, one of two things can follow from that. This court could say, in this 1581I action, yeah, those liquidations are invalid and set them aside. That's what the court did in the second Shinye case. When we talk about liquidation, it's very possible. The court might decide, well, I'm going to declare it invalid, not set it aside. In which case, at least we have a defense to a collection action. But you've run through the wormhole. Because you're talking about I, and you're ignoring A. And you can't go to I if you can use A. But if the question was A, and you just said, I don't think so, and segue it over to I. I can't use A to get the judicial review I'm looking for here. What I'm looking for here is an APA review. I'm bringing an action in equity. What I want the Commerce Department to do is to find the CIT, their administrator for it. On the other hand, you can get the result, which you sought, that is a determination on liquidation. I can't get that, Your Honor, without overturning the liquidation instruction. And that's not what a protest is for. And again, I invite the court's attention back to the Conoco case. You can't use the protest to get to a decision of another agency, even if that decision is going to merge in a liquidation. The protest is not a magic gateway. In the cases that Judge Kelly talked about in her decision, cases like Alden Leeds, there was no question about what Commerce had said. For example, in the Alden Leeds case, Commerce had told Customs suspend liquidation. Customs disobeyed that order and liquidated. Well, that's a Customs mistake, and you've got to file a protest to undo that mistake. But in this case, we don't know that Customs did anything wrong. Customs liquidated within six months after what they were told was the date of lifting the suspension of liquidation. What we're saying here is Customs was told wrong, that it was the Commerce Department that committed the error. Now, the only way for us to get relief is to have this case brought under 1581i under the Administrative Procedure Act, get Commerce to put that administrative record in front of the court so that we can review it. And we think, we believe, we very well might find it. Get it so you can review it. Where, in another case? Well, this wouldn't be a question of reviewing court in another case. This would be a question of reviewing the Administrative Procedure Act record that underlies these liquidations. Assume you get your judgment from us that, oh, yes, Commerce made a mistake. OK. Then what's the next? What do you do next? If the record shows. Do you want us to write an opinion that says your stuff should have been deemed liquidated? Well, somebody at some point. This appeals just here. That's my point, is you're going to file a protest then? Too late. Too late for a protest, isn't it? It's too late for a protest, but. So how do you get? You want to get a ruling that says your client has to pay duty at a lower rate, right? There's two ways. Are you out of pocket now? Is the client out of pocket money at the moment? They've been assessed with a lot of money over and over. Have they paid it over? They haven't paid it yet, no. I mean, they're challenging that. How do you effectively, once you get a ruling from us, if we were to agree with you, that Commerce messed up, gave the wrong instructions? How do you get from there to getting the monetary result your client wants? Well, I can get one of two things. As I said, as in the Shinye case, the second Shinye case, this court or the CIT might set aside that liquidation is invalid, even without the filing of a protest. And how do they do that? You just sort of do this. The CIT just frowns around in the records at court at Customs and say, oh, they made this mistake. No, this court in Shinye 2 held Customs liquidations invalid and remanded the case with orders for the CIT to direct Customs to undo their liquidations and refund money to Shinye. So that's a form of relief. If this court were to say, I'm just going to give you declaratory relief that those instructions were invalid and that you have a deemed liquidation, then if the government brings this case against us to collect these duties, we have a Cherry Hill defense and say, you can't collect these duties because the liquidations are invalid. It is possible that we may find that the proper date of lifting of suspension was never, and to this day has not been, communicated to Customs. If that were the case, then yes, we would be in the same situation, say, in the Alden-Leeds case. And you want to address the amendment by Congress of 1514 to conform with our determination in Fujitsu? I think it simply clarified that deemed liquidations as a class are subject to protest. But again, any liquidation, any decision that's going to be subject to a protest has to be a decision of Customs. The amendment did not change the fact that the protest statute only speaks of decisions of the Customs officer. So this is a decision with regard to these specific imports. No, they only carry out a ministerial role. They only carry out the instructions that Commerce gives them. So if Commerce is in charge, they never make a decision. Pardon? They never make a decision. A ministerial one. A ministerial one. But again, I would urge this court. Is that a decision? Huh? Is that a decision? Not a decision reviewable by protest, because it's not a decision of the Customs officer. It's not a decision. That's exactly contrary to what Fujitsu and the Congress say. Well, it's the other. A decision reviewable by protest. Again, Fujitsu, Alden-Leeds, these are cases where nobody is questioning the validity of what Commerce said. This is a different case. We're saying Customs acted on bad instructions. Customs is going to say, we made no decision. We carried out a ministerial function based on the instructions we were given. If those instructions were bad, then as a consequence, their liquidation may be set aside. But the way for me to get to show that the Commerce instructions were bad is through the APA. Pardon? Why can't you do that under A? Because A involves a trial de novo. A does not involve a review of an administrative record for Commerce. A does not involve the APA standard of arbitrary, capricious, or contrary to law. I can't do that under A, and that's the problem. Just as in the Conoco case, again, protest is not a magic window to go look into the records or look into the decisions of other agencies, even if those other agencies are then informing Customs what to do. You're well into your rebuttal time, Mr. Peterson. I know, Your Honor, and I'll save what little time I have. Thank you. If there's nothing else. Mr. Cicilline. May it please the Court, there are two places in Fujitsu that are dispositive in this case. First, if you turn to page 1374, this court held that a deemed liquidation is a protestable event. And as the court noted previously, that holding was then included in the amendment of section 1514 later on. And the second place has to do with the whole timing issue, and that's at page 1379, where the court explained that the suspension of liquidation does not lift until the period for all appeals is exhausted. And simply looking at the calendar in this case, trial court issued its final judgment in February. The appeal period expired in April. So the earliest that any of Hutchison's entries could have no longer been subject to the suspension of liquidation was the deadline for appeal in April. And then the entries all liquidated in September, five months later. So Fujitsu is dispositive on both of those bases. And for these reasons, we respectfully request the court affirm. OK. Any questions? Thank you. I think you set a new record, Mr. Cicilline. Thank you. Mr. Peterson. I'll restore your time to four minutes. OK, I hope I can match Mr. Cicilline in brevity. There obviously isn't much to rebut here. This action is to set aside liquidation instructions. A consequence of that may be that liquidations are ruled invalid, and that this court may set aside liquidations, or the Court of International Trade down the road may hold them to be unenforceable. The things that Mr. Cicilline referred to, whether there is some legislatively mandated 60-day stay pending appeal, that's a question you're not going to reach until you reach the merits of the liquidation instructions themselves. We're not going to know when the six-month period for customs to liquidate runs until we know when, if ever, that agency got valid liquidation instructions from customs. And what I think the CIT did improperly was they said, you know, Hutchinson, we're going to take your 1581-I complaint and rewrite it as a 1581-A complaint. Liquidation, whether it was pursuant to good instructions, bad instructions, or no instructions, is barred during the appeal period. Again, if you're challenging a decision of customs. A period. I mean, the effect of the stay says you're not supposed to liquidate, right? No, Your Honor, that's not true. Because in the second Shinya case, you had exactly that situation. You had liquidations, duty assessments, the protest period passed, it expired, nobody filed a protest. During a stay period? Pardon? During a period when it stayed? No, it wasn't stayed. I mean, liquidate in the second Shinya. What Mr. Tosini was telling me is that you have an appeal here, and the appeal goes on to X. And the customs is not supposed to be doing any liquidating, depending that appeal, right? Well, no, that's way ahead of what this case is involved. Was that correct? No, actually, I disagree. Although I will concede that this court has made such rulings, and those rulings, if we get to the merits, may have to be looked at en banc. We've made rulings that you disagree with? I think the Fujitsu ruling and perhaps one other consolidated bearings, if I'm not mistaken. So you're asking us to, you're saying that in order to have relief here, we need to go en banc and reverse Fujitsu? Not at this time, but at some future date, we may ask for that relief. I mean, that's the whole point here. I mean, what Mr. Tosini was talking about is this notion that Congress somehow imposed a 60-day stay on the enforcement of Court of International Trade orders in these cases. I would put it to you that separation of powers would prevent Congress from exercising the direct judicial authority in such a way. The Court of International Trade rules only contain one stay of execution of any judgment, and it's a 30-day stay in the rules, which can be shortened or extended on motion. So I mean, that's another and fascinating subject for a different day once we get our jurisdiction established here and we find out when the liquidation instructions were sent. But I would disagree with Mr. Tosini that Congress somehow legislated a 60-day judicial stay of final judgments. Thank you, Mr. Peterson. We thank the party for their argument. Thank you.